```
     E1A6SANC

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    ELVIS SANTANA, et al.,

4                  Plaintiffs,

5             v.                              13 CV 1628(LGS)

6    FISHLEGS, LLC., et al.,

7                  Defendants.

8    ------------------------------x
                                              New York, N.Y.
9                                             January 10, 2014
                                              3:45 p.m.
10
     Before:
11
                       HON. LORNA G. SCHOFIELD,
12
                                              District Judge
13
                             APPEARANCES
14
     LEE LITIGATION GROUP, PLLC
15        Attorneys for Plaintiffs
     BY:  C.K. LEE
16
     CLIFTON BUDD & DEMARIA, LLP
17        Attorneys for Defendants
     BY:  ARTHUR J. ROBB
18

19

20

21

22

23

24

25

                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

1            (Case called; in open court)
2            THE DEPUTY CLERK:  Counsel, please state your name for
3    the record.
4            MR. LEE:  C.K. Lee for the plaintiff.
5            MR. ROBB:  Arthur Robb, Clifton Budd & DeMaria
6    defendants.
7            THE COURT:  Good afternoon.  Counsel, we're here for a
8    discovery dispute.  I have your letters dated December 26th and
9    January 8th.  Just for the record, Mr. Robb, my rules provide
10   for a response within three days of the receipt of the letter
11   from a discovery letter.  In any event, I have it.  I have read
12   it and hopefully there will not be future discovery disputes.
13   I would like to do it fairly quickly because I have another
14   matter at 1:00.  Before we address these one by one are there
15   any that have been resolved?  You can refer to them by number.
16           MR. LEE:  Your Honor, unfortunately we haven't.  We
17   had scheduled to meet here a half hour before the conference,
18   but Mr. Robb never bothered showing up.  So I waited for a half
19   hour.
20           THE COURT:  Okay.
21           MR. LEE:  Here we are.
22           MR. ROBB:  We haven't and I do apologize.  I do have
23   other matters.  I wasn't able to get here sooner than the
24   scheduled time.
25           THE COURT:  Let's talk about, No. 1, pay stubs.

1   Mr. Robb said all of the information that is requested and
2   needed is on the payroll records.
3               Is that the case?
4               MR. LEE:  Well, the issue, your Honor, for pay stubs
5   is the information actually needs to be on the pay stub.
6   Whether it is on the payroll system or not is not necessarily
7   dispositive it is on the pay stub and employees have received
8   pay stubs with that information.  I have no idea.  That goes to
9   the penalty under the Wage Theft Prevention Act.  So saying it
10  is on the payroll doesn't really do anything.
11              THE COURT:  Because what you need are the stubs not
12  just the information on the stubs?
13              MR. LEE:  That's right.
14              THE COURT:  Mr. Robb, what is your response?
15              MR. ROBB:  Your Honor, I think it is a disingenuous
16  position that the plaintiff offers.  Mr. Lee handles many, many
17  wage-an-hour cases.  He understands what the report was
18  provided by the payroll company.  It is a week by week check
19  detail.  It takes the information contained on the pay stub and
20  puts it in a summary report form.  So we don't have to look at
21  52 weeks worth of pay stubs.  We have one report.
22              THE COURT:  Why don't we do this then:  Why don't you
23  produce, say, five pay stubs that correspond to entries on the
24  payroll records to illustrate that the pay stubs contain all of
25  the information on the payroll record as I think you just

1    explained to me.  If that is the case, then Mr. Lee can rely on
2    the payroll records as reflecting what is on the pay stubs.  If
3    there is a discrepancy, then you should talk to each other and
4    try work it out.
5         MR. ROBB:  I have no problem with that, your Honor,
6    the only thing I would say, and I don't know this with
7    certainty, but I am fairly confident in representing that
8    neither the defendants nor their payroll company keeps physical
9    pay stubs.  The pay stubs are generated from the system where
10   the report is generated.  So in order for us to produce pay
11   stubs, all we are going to be doing is taking the report and
12   the data from the report that Mr. Lee has and printing it out
13   in pay stub form.  So this seems like an exercise of futility.
14        THE COURT:  In other words, they would be created
15   after the fact.
16        Mr. Lee, is there some way we can deal with that
17        MR. LEE:  I don't think that is accurate, your Honor.
18   As Mr. Robb states, I have done many types of these similar
19   cases, and companies like Paychecks and others are able to go
20   back into their system and provide it.  I am not sure what he
21   is referring to.
22        THE COURT:  Why don't we do this:  Mr. Robb, if you
23   could make inquiries and try to come up with the five pay stubs
24   to illustrate that there is no discrepancy between the pay
25   stubs and the report and if that is the case then Mr. Lee will

1    be able to rely on your representation that what was on the pay
2    stubs and provided to employees is what is on the payroll
3    report.
4            MR. LEE:  Is it possible to have for the pay stubs he
5    is going to be providing as of May 2011 for different
6    employees?
7            THE COURT:  What he needs to do is provide pay stubs
8    not that are current but that correspond to the time period and
9    the payroll records that he is giving you.  I will give you
10   five from that time period.
11           MR. LEE:  Great.  Thank you.
12           THE COURT:  So Document Request 2, it sounds like you
13   need to talk about the sampling methodology and figure out
14   whether there is a way you can resolve that.
15           Go head, Mr. Lee.
16           MR. LEE:  I did provide a proposal of them providing
17   10 people per restaurant for a six-year period as of May of
18   each year.  His response was he doesn't like this and that --
19           THE COURT:  I think his hope was that you would then
20   talk to each other and figure out what to do.  That obviously
21   hasn't happened.
22           MR. LEE:  I tried. He didn't bother showing up.  He
23   never returned my calls.
24           THE COURT:  I am going to order you to meet and confer
25   on this and whatever other open issues you have not had a meet

1   and confer about.

2       Mr. Robb.

3       MR. ROBB:  I will avoid the ad hominem attacks, your

4   Honor, but the approach I would favor is 216(b) notices are

5   going out, I think today, depending on plaintiff's counsel.

6   The approach that I would favor is as opt-ins join the case, we

7   will inevitably produce employment records for those

8   individuals.  I would favor that we use those individuals as

9   the samples so that we're not duplicating efforts.

10       THE COURT:  Does that work for you, Mr. Lee?

11       MR. LEE:  That's fine.

12       THE COURT:  So No. 2 is resolved.  No. 3 regarding the

13   500-dollar jurisdictional requirement, it sounds like there are

14   a couple of issues here.  One is the jurisdictional

15   requirement.

16       Mr. Robb, is it possible to stipulate?  Is there a

17   serious dispute on that?

18       MR. ROBB:  There is not a serious dispute.  I need the

19   client to sign off on it.  I expect we can work that out.

20       THE COURT:  You will recommend to the client?

21       MR. ROBB:  I will certainly recommend.

22       THE COURT:  With regard to the information concerning

23   common ownership and control, do you know whether the financial

24   statements are consolidated?

25       MR. ROBB:  I am awaiting response on that.  I don't

1    know that to be the case.
2             THE COURT:  What I will ask is that Mr. Lee pose and
3    interrogatory that asks that question so that you don't have to
4    provide all the information in the sense of information, but so
5    that he gets the information that relates to common ownership
6    and management that might be derived from them.
7             The same with Request No. 5, why don't you do that
8    through interrogatories in the first instance.  If you want to
9    ask whether there are any common loans, leases, credit lines,
10   contracts between or among the various companies.  And then if
11   there are, ask who signs them or whatever else you need to
12   know.  That may take care of that one.
13            Document Request No. 4 sounds like the same kind of
14   sampling issue.  Can we deal with that in the same way?
15            MR. LEE:  Yes.  As people opt in, that is fine.
16            THE COURT:  Good.  No. 6 is e-discovery.  My
17   individual Rule 2(a)(3) requires the parties to cooperate with
18   regard to the search methodologies and so I would certainly ask
19   the parties to discuss and agree on custodians, search terms
20   for mass production files so that what is produced is actually
21   useful and relevant and probative.  Please keep in mind that
22   the doctrine of proportionality, which is incorporated already
23   in the federal rules, is what should govern.  That is, that the
24   effort and the costs that goes into extracting the information
25   shouldn't exceed its usefulness given the size of the case and

1    the issues at stake.  If there is a dispute about that, I will
2    think about cost-shifting, but I would much rather do is see
3    the parties come up with something that is narrow and tailored
4    to the case.
5             MR. LEE:  Yes, your Honor.  I made a proposal and I
6    have been waiting for him to give a counter-proposal.
7             THE COURT:  The only thing that I would order is you
8    spend an hour with each other to meet and confer about any
9    remaining issues.  If you resolve all the issues, then you
10   don't have to spend the whole hour talking to each other.  You
11   can do that within the next two weeks.
12            MR. LEE:  I have one more issue, your Honor.  The
13   parties had met and conferred on a lot of issues that we
14   haven't brought to the Court's attention and the defendants had
15   agreed to provide supplemental production by January 3.  We
16   have blown past that deadline.
17            THE COURT:  What is the fact discovery deadline at the
18   moment?
19            MR. LEE:  I do apologize, your Honor.
20            THE COURT:  Mr. Robb, when do you expect that
21   supplemental production to be ready.
22            MR. ROBB:  I am hopeful to have further word by the
23   client by early next week.  Apparently there was some internal
24   discussion.  One of the complicating factors, as counsel is
25   aware, the corporate HR director is out on maternity leave.  So

1   other people are filling in.  I was hopeful to have responsive
2   information.  This is what I communicated.  I was hopeful to
3   have it by 12:30, in which case I would be able to turn it
4   around by 1:30.  It didn't happen.  I am told there will be
5   meetings this week.  Hopefully we can follow up by next week.
6             THE COURT:  Today is the 10th.  If there are meetings
7   this week, I will order production by the 17th.  I will give
8   you a little leverage with your clients to get them to
9   prioritize it.
10            MR. ROBB:  Thank you, your Honor.
11            THE COURT:  Thank you.  Counsel.
12            MR. LEE:  Thank you, your Honor.
13                              o0o