# MINTZ & GOLD LLP
ATTORNEYS AT LAW

STEVEN W. GOLD
STEVEN G. MINTZ*
ALAN KATZ
JEFFREY D. POLLACK*
ELLIOT G. SAGOR
STEVEN A. SAMIDE
SCOTT A. KLEIN
TERENCE W. MCCORMICK
PAUL OSTENSEN
KEVIN M. BROWN
LISABETH HARRISON
JACK A. HORN
MARK POMERANTZ
ALEXANDER H. GARDNER
NOREEN E. COSGROVE
RYAN W. LAWLER*
HEATH LORING*
TIMOTHY H. WOLF
TIMOTHY J. QUILL, JR.
RICHARD H. TOPAZ*
MAKSIM KATS*

470 PARK AVENUE SOUTH
10TH FLOOR NORTH
NEW YORK, NEW YORK 10016

TELEPHONE (212) 696-4848
FACSIMILE (212) 696-1231
www.mintzandgold.com

OF COUNSEL

HONORABLE VITO J. TITONE *(dec.)*
(NY State Court of Appeals 1985-1998)

HONORABLE HOWARD MILLER
(NY Appellate Div. 1999-2010 [ret.])

HARVEY J. HOROWITZ
NEAL M. GOLDMAN
ERIC M. KUTNER*
ANDREW P. NAPOLITANO†

†ADMITTED TO PRACTICE ONLY BEFORE ALL
COURTS IN NEW JERSEY AND ALL FEDERAL COURTS
IN NEW YORK CITY

*ALSO ADMITTED IN NEW JERSEY

April 2, 2014

**By ECF and Fax**
The Honorable Gabriel W. Gorenstein, U.S.M.J.
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: Santana, et al. v. Fishlegs LLC, et al.,
Case No. 13 Civ. 1628 (LGS) (GWG)

Dear Judge Gorenstein:

We are counsel to Defendants in the above-referenced action. We write respectfully to respond to Plaintiffs' letter to the Court, dated March 31, 2014 (the "March 31 Letter").

On Friday, March 28, 2014, at approximately 1:20 p.m., counsel for both parties[1] participated in a fifteen minute telephone conversation to discuss the existing discovery dispute. During the call, we raised with Plaintiffs' counsel both (1) the lack of relevance to this action of Plaintiffs' requested electronic discovery and (2) potential alternative

---

[1] Participating on the telephone call were C.K. Lee and Anne Selig, counsel for Plaintiffs in this action, and Jeffrey D. Pollack and myself, counsel for Defendants.

# MINTZ & GOLD LLP
ATTORNEYS AT LAW

Honorable Gabriel W. Gorenstein
April 2, 2014
Page 2 of 4

means of collecting the information necessary for Plaintiffs to prosecute their claims, while simultaneously avoiding any unreasonable burden on Defendants.[2]

   We did not attend the January 31, 2014 discovery conference (the "January 31 Conference"), as we had not yet been substituted as counsel in this matter. However, we have contacted Defendants' prior counsel, Arthur Robb, Esq., to inquire whether Plaintiffs' account of the January 31 Conference is accurate. Mr. Robb indicated that, rather than issuing an Order to "run the searches and produce the E-discovery," as Plaintiffs contend in their March 31 Letter, the Court asked Defendants whether they were willing to run the proposed search terms and obtain a hit count in order to facilitate further discussion concerning electronic discovery in this matter. According to Mr. Robb, Defendants informed the Court that they would be amenable to running the search terms *for purposes of obtaining a hit count*, but never agreed to produce documents resulting from the application of Plaintiffs' proposed search terms. Indeed, Mr. Robb informed us that the Court never issued such an Order. Accordingly, inasmuch as Plaintiffs' March 31 Letter is misleading, at best, we ask the Court for permission to address briefly Plaintiffs' e-discovery requests.

   As prior counsel for Defendants noted in their January 29, 2014 letter to the Court, [Dckt. No. 52], this is a garden variety FLSA/NYLL action concerning (1) notice of Defendants' tip credit, (2) spread of hours pay, and (3) alleged time-shaving. We respectfully submit that email communications and other electronic files are unlikely to have any bearing whatsoever on either the adequacy of the notice Plaintiffs received concerning Defendants' tip credit or the number of hours worked by Plaintiffs. Further, such communications -- even if they were relevant -- would be merely cumulative of the Plaintiffs' detailed time and payroll records. Defendants already have produced these records for the named Plaintiffs and we are in the process of producing such detailed records for the opt-in Plaintiffs as well. This, along with Plaintiffs' testimony, is all the information Plaintiffs need to prosecute the action. Indeed, Plaintiffs have yet to articulate any reasonable basis for demanding production of their requested ESI.

   In their January 21, 2014 letter to the Court, [Dckt. No. 46], Plaintiffs' counsel relied on the Sedona Principles to support their argument that searching key terms within

---

[2] In violation of the Court's Individual Practices, Rule 2.A, at no time during this telephone call did Plaintiffs' counsel ever indicate that they intended to seek immediate relief from the Court concerning this discovery dispute.

# MINTZ & GOLD LLP
ATTORNEYS AT LAW

Honorable Gabriel W. Gorenstein
April 2, 2014
Page 3 of 4

custodians' email files would be an appropriate method of conducting electronic discovery in this matter. However, in doing so, they neglected to note that Fed. R. Civ. P. 26(b)(2)(C) imposes proportionality limits on all discovery, including discovery of ESI. See The Sedona Principles (Second Edition), The Sedona Conference, June 2007, at 7 & 17, Comment 2.b ("Electronic discovery burdens should be proportional to the amount in controversy and the nature of the case."). As Judge Koeltl has cautioned,

> conditional certification . . . should not be a vehicle for generating burdensome and disproportionate discovery. The burden or expense of discovery should be proportionate to "the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of discovery in resolving the issues."

Winfield v. Citibank, N.A., 843 F. Supp. 2d 397, 410 n.7 (S.D.N.Y. 2012) (quoting Fed. R. Civ. P. 26(b)(2)(C)).

Here, the case does not require collection and production of email communications and other electronic documents because liability and damages can be established based on the time and payroll records for the named and opt-in Plaintiffs. Email communications are unlikely to provide any additional relevant information than that contained in these records. Under these circumstances, requiring Defendants to collect custodians' emails and run Plaintiffs' proposed search terms would be inconsistent with the proportionality concept embodied in Fed. R. Civ. P. 26(b)(2)(C).

Moreover, even if email communications were relevant to the issues in this case, the search terms Plaintiffs have asked Defendants to run are extremely overbroad. As one example, searching for the term "(wait*)" -- a search that would include, *inter alia*, "wait," "waiter," "waitress," "waitstaff," "waited," "waiting," "waits," and "wait-time" -- in Defendants' servers for emails sent or received by restaurant owners and management likely would result in an enormous number of communications that are completely irrelevant to the issues in this action. Similarly, a search for the term "(bus*)" would include the terms "bus," "busboy," "busgirl," "busses," "bussing," "busser," "busy," "busiest," and "business." These terms are overinclusive because the vast number of email communications and texts likely to result from running searches for such terms are completely unnecessary for Plaintiffs to prosecute their claims. See Lin, et al v. Benihana Nat'l Corp., et al., 10 Civ. 1335 (RA) (JCF), Dckt. No. 185, p. 2 (S.D.N.Y. Apr. 2, 2013) ("the specific search terms suggested by plaintiffs are plainly overinclusive,

# MINTZ & GOLD LLP
ATTORNEYS AT LAW

Honorable Gabriel W. Gorenstein
April 2, 2014
Page 4 of 4

as they include terms like bus*, overtime and tip*"). As Plaintiffs argued in their own letter to the Court on January 21, 2014, [Dckt. No. 46], in developing "keyword searches for retrieval of ESI," counsel "at a minimum must carefully craft the appropriate keywords." Dckt. No. 46 at 1 (quoting Moore v. Publicis Groupe, 287 F.R.D. 182, 191 (S.D.N.Y. 2012) (Peck, M.J.) (additional citation omitted)). The keywords proposed by Plaintiffs are not "carefully craft[ed]," but rather include terms that are used countless times on a daily basis in the restaurant industry and are unlikely to yield any relevant communications.

Because Defendants are in the process of producing everything Plaintiffs need to prosecute their claims in this wage and hour case -- namely, the detailed time and payroll records -- it is apparent that Plaintiffs' request for ESI is merely a tactic designed to burden Defendants by driving up litigation expenses. We therefore ask the Court to deny Plaintiffs' motion to compel and to permit the case to advance without resorting to the undue burden and expense of unnecessary electronic discovery.

In the event the Court believes that discovery of ESI is warranted in this case, Defendants are prepared to run a search for the appropriate terms within the proposed custodians' email accounts for purposes of obtaining a hit count, as prior counsel discussed at the January 31 Conference. Once we have run such a search, we will be in a better position to discuss an appropriate ESI protocol in this action.

We thank the Court for its attention to this matter.

Respectfully submitted,

Timothy J. Quill, Jr.

cc:  C.K. Lee, Esq. (*via electronic mail*)