# LEE LITIGATION GROUP, PLLC

30 EAST 39TH STREET, SECOND FLOOR
NEW YORK, NY 10016
TEL: 212-465-1180
FAX: 212-465-1181
INFO@LEELITIGATION.COM

WRITER'S DIRECT:        212-465-1188
                       cklee@leelitigation.com

May 22, 2014

**Via ECF**
The Honorable Gabriel W. Gorenstein, U.S.M.J.
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

> Re:    *Santana v. Fishlegs LLC et al.*
>        Case No. 13-cv-1628

Dear Judge Gorenstein:

We are counsel to Plaintiffs and write to inform the Court of a discovery dispute. Pursuant to the Court's April 9, 2014 Order (ECF Dkt. No. 170), we respectfully submit this letter jointly with counsel to Defendants, setting forth both sides' positions. On May 7, 2014, myself, C.K. Lee (together with Anne Seelig, Esq.) met and conferred with Tim Quill, Esq. via telephone for 1 hour and 45 minutes (from 11:30 A.M. to 1:15 P.M.) in an attempt to resolve the open discovery issues, including but not limited to issues we raised by email to Defendants' counsel on May 1, 2014. Thereafter, on May 12, 2014, Mr. Quill met and conferred with me and Ms. Seelig via telephone for an additional 30 minutes (from 2:00 p.m. to 2:30 p.m.) to attempt to resolve other discovery issues, including several issues Mr. Quill raised regarding Plaintiffs' responses to Defendants' discovery requests during the May 7 meet and confer. Unfortunately, the parties were unable to reach agreement. This joint letter discusses the Plaintiffs' issues first, and then discusses Defendants' issues, in a point-counterpoint manner.

## I. Depositions

### Plaintiffs' Position

Plaintiffs have requested Defendants to produce the following individuals (identified during the deposition of Defendants' 30(b)(6) witness), for deposition: David Burke (individual defendant and executive officer), Steven Charron, Joseph Newmann, John Murray (executive officers), Michael Pfile, Hand Stanphl, E. Thomas Braeden, and Orlando Ramos (current restaurant managers), with David Burke to be produced first. Defendants' counsel, Mr. Quill, refused to state when the individuals would be produced.

**Defendants' Position**

Defendants' counsel did not refuse to state when the individuals would be produced, but rather stated that – as of the time of the meet and confer telephone call on May 7 – he had not yet obtained dates from these individuals concerning their availability for deposition. Defendants are aware of their discovery obligations and agree to produce for deposition individuals having relevant information. Defendants' counsel will speak with their clients to determine these individuals' availability for depositions and provide potential dates to Plaintiffs as soon as possible.

However, it is important for the Court to be fully aware of Plaintiffs' posture with respect to discovery at this time. As outlined in more detail in each of Defendants' responses below, Plaintiffs have effectively taken the position that Defendants must respond to all of Plaintiffs' discovery requests before Plaintiffs even begin to comply with the most basic of their own discovery obligations. With respect to depositions, Defendants would like to depose the named Plaintiffs and at least some of the opt-in Plaintiffs, but we are prevented from doing so because Plaintiffs have not yet produced documents[1] or answered interrogatories providing the bases for their claims. Plaintiffs' failure to produce any information concerning the bases for their minimum wage, overtime, and time-shaving claims prejudices Defendants and restricts us from being able to assert a defense. Accordingly, we ask that the Court order Plaintiffs to produce documents responsive to Defendants' requests and answer Defendants' interrogatories by June 20, 2014, so that Defendants may attempt to schedule depositions of Plaintiffs and so that discovery in this matter is not one-sided.[2]

## II. E-Discovery

**Plaintiffs' Position**

As this Court is fully aware, on January 31, 2014 the Court held a discovery conference during which Your Honor instructed Defendants to run E-discovery searches based on the terms and custodians proposed by Plaintiffs, and to raise the issue with the Court if hit count results appeared excessive, at which point the parties would confer regarding narrowing the searches, if necessary. As Defendants failed to comply with the Court's Order, Plaintiffs wrote to the Court on March 31, 2014 (ECF Dkt. No. 168) regarding the E-discovery dispute. Pursuant to Your Honor's April 9, 2014 Order, Defendants were directed to start the process of running e-discovery searches "immediately", and obtain the hit counts in order for the parties to have a further discussion, if necessary, regarding the search terms.

On April 22, 2014, Defendants provided a hit count report, covering searches on only six (6) of the ten (10) custodians. No hit counts were provided for Prudence Pitter (Defendants

---

[1]     As explained more fully below, to date, Plaintiffs have produced documents totaling only 38 pages – 34 of which are printouts from publicly available websites, having no bearing on the merits of Plaintiffs' claims.

[2]     Depositions were scheduled for May 20, 2014, and May 28, 2014, for Mr. Santana and Mr. Jaime-Dorantes, respectively, but because no documents have been produced, and because of my emergency family matters, both depositions have been adjourned.

previously designated 30(b)(6) witness), Mark Hamwi (Defendants' current 30(b)(6) witness), Joseph Scalise or Susan Buckley.  During the May 7, 2014 meet and confer, Defendants stated they had not yet run the searches on the remaining custodians and were unable to provide a date certain by which they would produce the hit counts or the underlying emails.  As this E-discovery dispute has been ongoing since at least January 2014, more than five months ago, Plaintiffs respectfully request the Court to compel Defendants to provide their email production immediately.

Defendants have thus far refused to provide any email production, claiming that the hit count has produced approximately 150,000 hits.  We don't believe such result is extraordinary but have requested that Defendants review the results and advise as to how to streamline searches because they have possession and knowledge of the results.  They have refused.  For the search terms: wait*, tip*, bus*, gratuity, (service* /20 fee), and (service w/20 charge), Plaintiffs have agreed to limit the production to the following custodians: Pitter, Hamwi and Suric.

### Defendants' Position

Defendants have run the e-discovery search terms on the remaining four custodians pursuant to the Court's April 9, 2014 Order and have provided the hit count results to Plaintiffs' counsel.  However, as we have explained to Plaintiffs' counsel many times, terms such as wait*, tip*, bus*, gratuity, (servic* /20 fee), and (service* w/20 charge) are resulting in a large number of hits because these terms are central to the restaurant industry.  For example, the search term (service* w/20 charge) appeared more than 63,000 times in the e-mails of only eight custodians.  Further, Plaintiffs' feigned concession to reduce the number of custodians from whom they seek documents containing these overbroad, generic terms does not resolve the problem.  Indeed, applying these search terms solely to the accounts of Ms. Pitter, Mr. Hamwi, and Mr. Suric still results in the following hit counts:

| | |
|---|---|
| (Service w/20 Charge) | 41,215 |
| (Servic* w/20 Fee) | 41,142 |
| Bus* | 27,320 |
| Wait* | 13,890 |
| Tip* | 11,973 |
| Gratuity | 2,592 |

Despite Plaintiffs' contention that these hit totals are not "extraordinary," in an FLSA action ostensibly based on the allegation that Defendants failed to provide notice of a tip credit, such a large hit count demonstrates that Plaintiffs' proposed search terms are not narrowly tailored to address the specific matters at issue in this action.  Judge Schofield noted during the parties' January 10, 2014 discovery conference that "the doctrine of proportionality . . . should govern" e-discovery in this case and "that the effort and the costs that go[] into extracting the information shouldn't exceed its usefulness given the size of the case and the issues at stake." Judge Schofield also mentioned the possibility of cost-shifting, but indicated that she would rather "see the parties come up with something that is narrow and tailored to the case."  Here, instead of attempting in good faith to develop more targeted search terms, Plaintiffs are engaged

3

in an ESI fishing expedition and have refused our repeated requests to revise and narrow their proposed search terms.

During the first telephone call between Defendants' counsel and Mr. Lee in February, Mr. Lee informed us straight-out that this case was about Defendants' alleged failure to provide notice of their withholding of a tip credit from employees. In fact, when I made a comment during that phone call about obtaining video concerning Plaintiffs' working hours (to the extent such video exists), Mr. Lee stated that the case was "not about time-shaving." Since that time, Mr. Lee's representations concerning Plaintiffs' claims in this matter appear to have shifted to whatever suits him at the time – from failure to provide notice of a tip credit, to time-shaving, to failure to pay overtime. Plaintiffs' counsel seems to be unwilling to provide narrowly tailored search terms because they have no idea as to what are the bases for their claims and they are engaged in a fishing expedition.

We are more than willing to work with Plaintiffs' counsel to develop more targeted search terms, but Plaintiffs' counsel continues to thwart our efforts to do so. Indeed, on at least two separate occasions during our meet and confer calls, we asked Mr. Lee for information concerning the kinds of ESI communications he is looking for – so that we have an idea of search terms that might be effective in identifying relevant ESI. Rather than assist us in this endeavor, Mr. Lee responded that he "doesn't have to share [his] litigation strategy with [us.]" While that may be true, Defendants, in our attempt to develop more useful search terms, cannot divine what it is that Plaintiffs might be looking for. Accordingly, we request that the Court order Plaintiffs to (1) provide search terms that are narrowly tailored to the issues in the case, (2) provide at least some information concerning the bases of their claims so that we may develop more targeted search terms designed to identify and produce relevant documents, or (3) withdraw their demands for e-discovery, which have absolutely no bearing on the issue of whether Plaintiffs received proper notice of the tip credit – which Mr. Lee, himself, previously stated is the central issue in this case.

### III. Sampling for Production and Deposition of Opt-in Plaintiffs

#### Plaintiffs' Position

Given that there are 100 claimants in this case (98 people have opted-in, plus 2 named Plaintiffs), Plaintiffs have proposed that discovery for the Opt-ins (as to Plaintiffs' written responses and depositions) be based on a sampling of 10 individuals. Discovery on 100 separate individuals is too cumbersome, expensive and impracticable. Defendants have refused to consent to the sampling. Plaintiffs respectfully request the Court to grant Plaintiffs' request for discovery to proceed on a sampling basis for the Opt-in Plaintiffs.

#### Defendants' Position

This is not a typical FLSA case in which the plaintiffs' burden is minimal because the employer failed to maintain records. To the contrary, in this case, Defendants maintained detailed records reflecting the hours Plaintiffs worked, the overtime they worked, the compensation they received, the tip credits withheld by the employer, and other information

4

required to be maintained by the employer pursuant to applicable statutes. Accordingly, the alleged liability in this case stems – not from Defendants' failure to maintain records reflecting Plaintiffs' hours worked and compensation – but rather from Plaintiffs' allegations that Defendants' records are incorrect. In such a case, it is impossible for an employer to mount a defense without knowing how much "time shaving" each Plaintiff alleges the employer engaged in and the nature of such alleged time-shaving (e.g., changing time cards or requiring off-the-clock work), or how much overtime work each Plaintiff claims to have done. Rather than providing this information, Plaintiffs take the position that they are not obligated to produce such documents or answer interrogatories requesting such information at this time. Indeed, during the May 7 meet and confer, when Defendants' counsel asked Mr. Lee when Plaintiffs would be producing documents responsive to Defendants' requests, Mr. Lee stated that he does not have to produce documents because he represents the Plaintiffs and the opt-in period has not expired yet (emphasis added). Further, Plaintiffs repeatedly object to Defendants' requests for documents (including, for example, Defendants' request for "documents that reflect or evidence that [Plaintiffs] worked more hours than [they] reported to any Defendant") on the grounds that they call for the production of documents which are "equally accessible by Defendants." This is nonsensical. If Plaintiffs claim that Defendants' records are inaccurate, and if they have documents to support that claim, they must produce such documents. Without specific information from the opt-in Plaintiffs regarding the amount of hours worked and the extent of the alleged inaccuracy of the employer records, Defendants cannot present a defense to Plaintiffs' claims. Accordingly, we are willing to limit Defendants' depositions to the two named Plaintiffs and ten opt-in Plaintiffs of our choosing, but we respectfully request that the Court order each named and opt-in Plaintiff to (1) produce documents responsive to Defendants' requests and (2) answer Defendants' interrogatories by June 20, 2014.

### IV. Defendants' and Plaintiffs' Discovery Production

#### Plaintiffs' Position

Defendants have only provided summary payroll of 72 of the 98 Opt-ins, and have provided none of their employee files. Defendants refused to provide a hard deadline for the end of their "rolling discovery production" other than to state that the documents would be produced by the "end of discovery". Such production is untimely and would unfairly prejudice Plaintiffs. Plaintiffs respectfully request the Court to compel Defendants to produce all responsive discovery documents by a date certain, in any event no later than 15 days from the date of this letter.

#### Defendants' Position

Defendants are still in the process of collecting and producing documents, including but not limited to payroll records of the remaining 26 opt-in Plaintiffs and employee files of all named and opt-in Plaintiffs. We will endeavor to produce these documents far in advance of the discovery deadline. However, this is yet another instance in which Plaintiffs demand that we comply with each of their requests, but fail to meet even the most basic of their own discovery obligations.

As of today, Defendants have produced 3,762 pages of documents. While we acknowledge that we have many more documents to produce and that this is not a large sum, it is a considerable number in comparison to the documents produced by Plaintiffs – a total of 38 pages. Further, of the 38 pages produced by Plaintiffs, 34 of them are documents that are publicly available – documents that Plaintiffs printed from the New York State Department of State, Division of Corporations, the New York State Liquor Authority, and screen shots from Defendants' website. Accordingly, Plaintiffs' counsel's sudden request that the Court order Defendants to produce all documents within 15 days from the date of this letter – when Plaintiffs have produced only four pages responsive to Defendants' document requests – is absurd.

Moreover, Plaintiffs have been unwilling to take a consistent position concerning whether or not they have attempted to collect documents responsive to Defendants' requests. During the May 12 meet and confer, Mr. Quill (counsel for Defendants) asked Mr. Lee whether Plaintiffs' counsel had communicated with all opt-in Plaintiffs in an effort to determine whether they had any documents responsive to Defendants' requests. Mr. Lee first represented that members of his legal team had spoken with all of the opt-in Plaintiffs, but that he could not state on the call whether there were any additional papers in their files that needed to be produced. Then, less than two minutes later, Mr. Lee contradicted his earlier representation by stating that the opt-in Plaintiffs have no documents whatsoever. Clearly, rather than complying with their discovery obligations, Plaintiffs' counsel are engaging in obfuscation tactics. Accordingly, Defendants respectfully request that the Court order each named and opt-in Plaintiff to produce documents responsive to Defendants' requests by June 20, 2014.

### V. Plaintiffs' Requests Following the Deposition of Mark Hamwi

#### Plaintiffs' Position

Based on the deposition of Mark Hamwi, Plaintiffs requested Defendants to provide the following items, all of which Defendants' counsel could not provide a response to other than to state he would take our requests under advisement and speak with the partner of Defendants' counsel's law firm, Jeffrey Pollack, regarding these issues (unless otherwise noted in bold below):

A. Contact information for the following individuals:
  - AJ Meritt, Evan Darnell, Susan Buckley, Teddy Suric (each were past managers at various restaurants)
  - Patrick Rodemeyer, Jose Mak Leveriga, Christopher Shea and Raul Whittaker (each were head chefs at various restaurants)
  - Sandy Lee (HR)
  - Cina Lins of Citrin Cooperman (accountant)

B. Contact information for the client contact at Modern Business Associates and ADP; vendor contract for each company with each Defendant.

6

C. Supplemental ADP summaries per the deposition. (**Defendants stated they were working on producing it, but could not provide any hard deadline for the production, other than to state it would be 'before the close of discovery').**

D. All forms of employee application forms, along with all versions of employee manuals.

E. Corporate documents that show who the directors, officers and shareholders are for 133 Townhouse LLC, BBox LLC and all corporate Defendants. (**Defendants agreed to provide for the new entities per Judge Schofield's earlier direction during the January 31, 2014 conference but refused to specify when).**

F. Vendor contracts per Plaintiffs' original document request.

### Defendants' Position

At the time of the meet and confer call on May 7, another matter came up and I, Jeffrey Pollack, the attorney in charge of this matter, was unable to participate in the call. Mr. Quill participated in my stead and was not, at the time, in a position to provide responses to Plaintiffs' questions. At this time, however, Defendants are able to respond fully to each of Plaintiffs' issues above:

A. To the extent contact information for these individuals is within Defendants' possession, custody, and control, Defendants will provide Plaintiffs with the information requested. However, Plaintiffs' request in this regard is, again, illustrative of the approach Plaintiffs' counsel has taken in this case – to drive up his legal fees in an effort to force Defendants to settle. Indeed, during the May 7 meet and confer, Mr. Lee stated to Mr. Quill that if Defendants want Plaintiffs "to respond to interrogatories for 100 opt-in plaintiffs, [Mr. Lee's] fees are going to go up like crazy." Although Mr. Lee may have 12 or 13 attorneys at his disposal to work on this case – as he also mentioned during the May 7 call – that does not give him license to drive up fees in bad faith by taking (and preparing for) unnecessary depositions.

This is not the first time that Mr. Lee has sought to increase his legal fees unnecessarily in an FLSA case. Indeed, in Agudelo v. E & D LLC, 12 Civ. 960 (HB), 2013 WL 1401887 (S.D.N.Y. Apr. 4, 2013), an FLSA case that the parties agreed to settle for $30,000, Mr. Lee sought attorneys' fees, costs, and expenses of $19,680.96 – 65.6 percent of the total settlement amount – and represented to the court that this total was reached after Mr. Lee's firm had already discounted its rates. Judge Baer found that (1) Mr. Lee's hourly rates were disproportionately high,(2) the most experienced attorneys at Mr. Lee's firm performed most of the work on the case, and (3) counsel had billed excessive hours. Agudelo, 2013 WL 1401887, at *5-8. In reducing Mr. Lee's total attorneys' fees and costs from the requested $19,680.96 to $15,000, Judge Baer cautioned Mr. Lee "to focus on the fact that the FLSA and related legislation were enacted to help disadvantaged employees, not their lawyers." Id. at *9; see Zhao Hui Chen v. Jin Holding Group, Inc., No. 10 Civ. 0414 (PAC), 2012 WL 279719, at *9-11 (S.D.N.Y. Jan. 31, 2012) (noting that "[i]t is not reasonable to continue to pursue an unreasonable goal, run up hours, and seek reimbursement from defendants for every hour expended" and reducing Mr.

Lee's requested hours by forty percent to "eliminate[] the windfall that Mr. Lee would otherwise enjoy.").

      B.  Defendants will provide Plaintiffs with contact information for the client contact at Modern Business Associates and ADP as soon as possible.  However, Defendants object to Plaintiffs' request for a copy of the vendor contracts.  Such documents are proprietary information and completely unrelated to any issues in this case.

      C.  As Plaintiffs acknowledge, Defendants are in the process of producing ADP summaries for all named and opt-in Plaintiffs.  We ask the Court's indulgence to grant us additional time to produce such documents as we continue to work diligently to accomplish this goal.

      D.  Defendants are in the process of collecting and producing employee application forms.  Defendants have already produced one version of their employee manual and intend to produce all other versions from the relevant time period within their possession, custody and control.

      E.  Defendants have agreed to provide Plaintiffs with the names and contact information of the directors, officers and shareholders for all corporate Defendants, but we have not agreed to provide the Defendants' corporate documents.  Plaintiffs' counsel misrepresents to the Court Judge Schofield's order.  First, the discovery conference before Judge Schofield was held on January 10, 2014 – not January 31.  Further, at that conference, the parties disputed whether Defendants must provide to Plaintiffs' counsel vendor contracts, financial documents, tax returns, leases, and documents reflecting loans and credit lines.  Plaintiffs argued to Judge Schofield that this information was necessary to determine (1) who is responsible for signing Defendants' leases and (2) whether the Defendant entities operate as a common enterprise.  Judge Schofield ruled that Defendants were not obligated to produce these documents, but rather that Plaintiffs could obtain the relevant information through interrogatories asking whether there are common loans, leases, credit lines, and vendor contracts among the restaurants.  Defendants are complying with the Court's ruling and will provide Plaintiffs with a list of this information as soon as possible.

      F.  We object to Plaintiffs' request for all vendor contracts entered into by Defendants.  In addition to being proprietary information, these vendor contracts are irrelevant, unrelated to the claims asserted in this action, and requests for such documents are not reasonably calculated to lead to the discovery of admissible evidence.  Plaintiffs' request for these documents further demonstrates their fishing expedition in this case.

Respectfully submitted,

_____
C.K. Lee
Counsel for Plaintiffs

_____
Jeffrey D. Pollack
Counsel for Defendants

cc:    All parties via ECF